# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GERALD WILLIAMS,**
        **Petitioner,**

    v.                                      **Case No. 08-C-1096**

**MICHAEL THURMER,**
        **Respondent.**

## ORDER

Pro se petitioner Gerald Williams, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction of first-degree reckless homicide for which he was sentenced to twenty-five years in prison. After receiving the petition and denying petitioner's request to appoint counsel, I set a briefing schedule in the case. Instead of filing a brief, petitioner filed a short letter stating that he could not formulate any arguments. I gave petitioner another opportunity to file a brief and warned him that failure to do so could result in dismissal with prejudice for lack of prosecution. See Civil L.R. 41(c) (E.D. Wis.); Fed. R. Civ. P. 41(b). Petitioner again failed to file a brief, instead filing a one page letter stating that he did not understand the issues in his case and needed a lawyer.

To the extent that petitioner again asks me to appoint counsel, I will deny his request. As I have stated previously, I am not persuaded that petitioner cannot obtain justice absent an attorney. See Winsett v. Washington, 130 F.3d 269, 281 (7th Cir. 1997). Furthermore, petitioner has not demonstrated a reasonable probability of success if counsel were appointed. See id.

Having warned petitioner that failure to file a brief could result in dismissal of the case, I will dismiss the case for failure to prosecute. See Civil L.R. 41(c) (E.D. Wis.) and Fed. R. Civ. P. 41(b); see also Spears v. City of Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996) (stating that a judge may assume that deadlines will be honored). Petitioner knew enough about his case to file a petition. He surely could have advanced some argument as to why the petition should be granted. The requirement that he file a brief was not a requirement that he file a brilliant brief.

Alternatively, I will address petitioner's claims on the merits. I may grant petitioner relief only if the decision of the state court of appeals affirming his conviction was contrary to or an unreasonable application of clearly established Supreme Court precedent, § 2254(d)(1) or was based on an unreasonable determination of the facts, § 2254(d)(2). Petitioner raises three challenges to his conviction: (1) that he was deprived of due process when witnesses referred the decedent as "the victim"; (2) that he was deprived of his Sixth Amendment confrontation right when the trial court admitted hearsay evidence; and (3) that he was deprived of his Sixth Amendment right to an impartial jury when the trial court dismissed a juror who it determined was biased.

The state court of appeals addressed these claims as follows:

**Characterizing Decedent as "The Victim"**

> Since Williams was defending the charge on the grounds of self-defense, he objected to [Detective] Burems referring to Smith as "the victim," asserting that whether Smith was a victim was for the jury to decide. The trial court overruled the objection without comment. Burems used the term "victim" a few more times when speaking of Smith, as did two other detectives during their testimony describing their investigative duties. Williams submits on appeal that by allowing Smith to be called "the victim," the trial court permitted the implication that Williams was the aggressor, thereby undermining his claim of self-defense.

2

. . . .

The detectives used the word "victim" in the context of describing events in the course of their investigative activities. Granted, the trial court might have instructed them to use the appellation "Mr. Smith"; perhaps ideally it should have. Under these facts, however, it strikes us as logical for the police officers to refer to the decedent in a homicide investigation as "the victim."

. . . .

We conclude that the term "victim" did not cast Smith in an overly sympathetic light. We see no reversible error.

**Hearsay and Limiting Instruction**

Leo Covington was a passenger in Smith's car the night of the confrontation. At trial, Covington testified that he and Smith were on their way to purchase cigars and something to drink when, while at a red light, Smith's attention was caught by a nearby car or the person in it. Covington testified that Smith said, referring to Williams, "[T]his nigger supposed to be lookin' for me," so Smith pulled into the gas station. Williams objected on the grounds of hearsay noting that, with Smith dead, Smith could not be cross-examined about it. In response, the State contended that it offered the statement simply to explain what happened next, namely, Smith's act of driving into the gas station. The trial court accepted this explanation and then advised the jury that the testimony was offered solely to explain the chain of events and cautioned that the statement should not be accepted for its truth because Smith could not testify as to whether or not it was true.

. . . .

Williams contends that Covington's statement about Williams looking for Smith should have been stricken as hearsay and that the trial court's limiting instruction could not overcome the prejudice the statement caused. We disagree.

A trial court's decision to admit a hearsay statement is a discretionary one, and we will not reverse the decision unless the record shows that the ruling was manifestly wrong and an erroneous exercise of discretion. Here, the trial court admitted the statement to explain why Smith entered the gas station lot, not to show that Williams actually was looking for Smith. Where a declarant's statement is offered for the fact that it was said, rather than the truth of its content, the evidence by definition is not hearsay.

Williams also complains that the admission of Smith's statement unfairly prejudiced him . . . .

And, in any event, after determining that the evidence was not excludable hearsay, the trial court immediately cautioned the jury that the testimony should not be accepted "for its truth because the person who said those words is not here today to tell us whether those words are true or not." A limiting instruction serves to eliminate or minimize the risk of undue prejudice. . . . The admission of Smith's statement for the narrow purpose of explaining how events unfolded, coupled with a limiting instruction, was not manifestly wrong or an erroneous exercise of discretion. Williams' argument fails.

**Dismissal of Juror**

Williams asserts that he was denied his Sixth Amendment right to a fair and impartial jury because the trial court dismissed a juror based upon an unreasonable conclusion of bias. We disagree.

. . . .

After the close of the evidence, but before final arguments and jury instructions, the bailiff reported to the trial court that one of the thirteen jurors had advised that she had a concern about her possible bias in the case. Specifically, the juror referenced a portion of Williams' testimony in which he admitted that, when first questioned about shooting Smith, he had lied to the police about his involvement because he was scared.

Out of the presence of the other jurors, the trial court questioned the juror regarding this matter. In response, the juror reported an encounter with police officers at her home about a year before during which she and her family felt intimidated. She stated that after this experience she could understand why fear might impel Williams to initially lie to the police. Asked whether she thought she could be a fair juror, the woman answered, "For that part of it, I don't know, I honestly couldn't say." She stated that she believed she could follow the court's instructions as to the law, but did not want "to have an argument with fellow jurors one way or the other."

. . . .

Over Williams' objection, the trial court designated the juror the alternate juror and then dismissed her. The remaining twelve jurors were told only that the dismissed juror had expressed some concerns about her objectivity, and thus was named as alternate and released

4

> . . . .
>
> Based on the information gleaned in the exchange, the trial court concluded, based on the juror's words and her demeanor, that the juror could not "be a fair juror at this point." In addition, the court noted that as soon as the matter came to light, it had instructed the bailiff to caution the juror to not discuss the matter with the other jurors, and the bailiff confirmed that the juror assured that she had not done so. The court stated that it would then advise the remaining twelve jurors that, for reasons not essential for them to know, the juror would be designated as the alternate. We see no erroneous exercise of discretion.

State of Wisconsin v. Gerald Williams, 289 Wis.2d 550, 2006 WL 167656, at *1-6 (Wis. App. Jan. 25, 2006) (footnotes and internal citations omitted).

Petitioner procedurally defaulted his first claim. In order to obtain review of the merits of a claim in a federal habeas proceeding, a petitioner must assert the claim in the state courts. Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) (stating that a claim not properly asserted at every level of state court review is procedurally defaulted). In the present case, petitioner did not argue in the state court of appeals that the fact that the trial court allowed the police officers to refer to the decedent as the victim deprived him of due process. Rather, he framed the issue solely in terms of abuse of discretion. Thus, the state court of appeals did not address the federal constitutional issue that petitioner seeks to raise in this court. Therefore, petitioner failed to preserve the issue for review in this court. Id. In addition, petitioner makes no attempt to establish cause or prejudice.

Moreover, erroneous state court evidentiary rulings do not entitle a petitioner to federal habeas relief unless the rulings were so prejudicial that there is a significant likelihood that "an innocent person has been convicted." Anderson v. Sternes, 243 F.3d 1049, 1053 (7th Cir. 2001). Petitioner does not come close to making this showing.

5

Petitioner's confrontation clause claim also fails. The state court of appeals concluded that the statement at issue was not hearsay and that conclusion was not unreasonable.

Petitioner's claim with respect to the court's dismissal of a juror also fails. Petitioner does not claim that the jury was biased. Rather, he argues that the jury would have been more favorable to him if the judge had retained the juror that he believed was biased. However, because petitioner does not object to the jury that convicted him, he sets forth no constitutional violation. Ross v. Oklahoma, 487 U.S. 81, 86 (1988). Further, the court of appeals reasonably determined that the trial court took appropriate steps to ensure an impartial jury. Due process requires "the trial judge, if he becomes aware of a possible source of bias, to 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial.'" Oswald v. Bertrand, 374 F.3d 475, 477-78 (7th Cir. 2004) (quoting Remmer v. United States, 347 U.S. 227, 230 (1954)). The record clearly demonstrates that the trial court properly investigated the relevant circumstances and their impact on the juror.

Thus, petitioner's application for habeas relief also fails on the merits. Therefore, for the reasons stated,

**IT IS ORDERED** that this case is **DISMISSED** for failure to prosecute. Alternatively, it is dismissed because petitioner's claims fail on the merits.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The

6

standard for making a "substantial showing" is whether reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner has not made such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin this 24 day of June, 2010.

/s_____
LYNN ADELMAN
District Judge